Scott Edward Cole, Esq. (S.B. #160744)
Laura G. Van Note, Esq. (S.B. #310160)
Mark T. Freeman, Esq. (S.B. #293721)
**COLE & VAN NOTE**
555 12th Street, Suite 2100
Oakland, California 94607
Telephone: (510) 891-9800
Facsimile: (510) 891-7030
Email: sec@colevannote.com
Email: lvn@colevannote.com
Email: mtf@colevannote.com

*Attorneys for Representative Plaintiffs and the Plaintiff Classes*

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

ELLIOTT MAYER, KAREN RIGGENBACH, ALEGRA LOEWENSTEIN and AGNIESZKA UMINSKA PILAT, individually, and on behalf of all others similarly situated,

Plaintiffs,

v.

HILTON WORLDWIDE HOLDINGS INC.,

Defendants.

**Case No. 3:26-cv-04756**

**CLASS ACTION**

**COMPLAINT FOR DAMAGES, INJUNCTIVE AND EQUITABLE RELIEF FOR:**

1. Americans with Disabilities Act (42 U.S.C. §§ 12101, *et seq.*)
2. Unruh Civil Rights Act (Cal. Civil Code §§ 51, 52)
3. False Advertising Act (Cal. Business and Professions Code §§ 17500, *et seq.*
4. Consumers Legal Remedies Act (Cal. Civil Code §§ 1750, *et seq.*)
5. Unfair Competition Law (Cal. Business and Professions Code §§ 17200, *et seq.*)

**[JURY TRIAL DEMANDED]**

## INTRODUCTION

1. Even beyond the 26.8% of adults who already suffer from asthma/asthma-like conditions, or the 27.5% (and growing) of adult Americans who suffer from Chemical Sensitivity, there is rapidly growing concern of the harmful and disabling effects of exposure to Synthetic fragranced consumer products. For particularly susceptible segments of the population (e.g., persons with autism/ autism spectrum disorders), the disabling effects have been found in at least 85.4% of that population. Regardless of their individual susceptibilities, 53.1% of Americans support and fragrance-free policies in their workplaces, 55.6% of Americans would (even without knowing the full range of adverse health effects detailed in this pleading) choose a hotel without fragranced air, and nearly everyone is aware of at least some of the health problems and annoyances associated with unwelcome fragrance in eating establishments, on airplanes, in hotel rooms, in doctors' offices, and in countless other places of public accommodation.[1] On information and belief, Representative Plaintiffs aver that these percentages would be far greater if those surveyed knew the full panoply of unregulated and toxic synthetic compounds normally found within Synthetic fragranced consumer products.

2. A "Synthetic fragranced consumer product" is a base product to which synthetic fragrance compounds are then added and/or is a product that is largely comprised of fragrance. Synthetic fragranced consumer products, as defined further below, are used regularly by hotels, banks, restaurants, wineries, medical and dental facilities, brick and mortal retail stores and a multitude of other businesses across a host of industries to impart what they purport to be a pleasant, or at least unique, aroma and/or to mask unpleasant odors, mold, etc. Among other insidious realities, by use of these fragranced compounds, visitors are left unaware of other dangerous conditions (e.g., deadly mold). For many businesses using Synthetic fragranced

[1] A reported 53.1% of Americans are supportive of fragrance-free policies for workplaces—a number which rises to well over 70% for persons with chemical sensitivity. Among the general population (groups studied in the United States, Australia, United Kingdom and Sweden), if given a choice between staying in a hotel with or without fragranced air, 60.7% of those surveyed reported they would prefer a hotel without fragranced air. (*See*, https://www.sciencedirect.com/science/article/pii/S0360132319302148?via%3Dihub#sec7).

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

consumer products, the use thereof is aimed at increasing profits, protecting the businesses' reputation and, frankly, it is usually cheaper to introduce Synthetic fragranced consumer products than to fix (replace the carpet, improve water drainage) the source of the initial health concern. Ironically, by introducing Synthetic fragranced consumer products in this manner, these businesses are, in fact, *increasing* the health risks for visitors. These business are also creating environments unfit for human beings, especially those with chemical sensitivity disabilities.

3. Terms such as "scent" or "smell" are not synonymous with "fragrance." Persons with chemical sensitivities, for example, do not generally experience shallow breath, panic, skin irritation and/or other adverse conditions from exposure to a garden flower. Fragrance is man-made and, as a man-made product, it is laboratory designed with compounds (or built to create those compounds when they interact with the oxygen, argon, nitrogen and carbon dioxide in the ambient air) not normally found in nature and which are routinely hostile to human health. For persons already suffering from respiratory disabilities, for example, the adverse health reactions to fragrance can be acute and extreme.

4. As man-made products, Synthetic fragranced consumer products consist of complex mixtures of solvents with extracts, synthetic compounds, resins or some combination thereof. These mixtures contain volatile organic chemicals which, when exposed to the public, even at low concentrations, can trigger various acute reactions and lead to chronic pathological conditions.[2] These effects are especially concerning when fragrance is foist upon the public (e.g., in foyers of hotels, restaurants and other public accommodations) without the visitors' consent and without warning.

5. For most businesses wishing to introduce Synthetic fragranced consumer products into their common areas' ambient air, a multitude of vendors offer scent dispersion machines ("SDMs") and air supply tubes—either as portable/standalone SDMs and/or ones which can be

---

[2] Though the exact chemical composition of fragrances varies by application and producer, use of these products presents an intrinsic risk to indoor air quality. *See*, Rádis-Baptista, Gandhi. 2023. "Do Synthetic Fragrances in Personal Care and Household Products Impact Indoor Air Quality and Pose Health Risks?" Journal of Xenobiotics 13, no. 1: 121-131. *See,* https://doi.org/10.3390/jox13010010.

integrated with the businesses' HVAC system,[3] so as to atomize and deliver a steady stream of toxic compounds across the entire or pre-selected zone(s) within those businesses' facilities.

6. Since these SDM units/systems emit aerosols, often in sub-micron particle sizes, these airborne compounds are capable of breaching and almost always do immediately breach the human respiratory tract's ordinary filtering methods, and are then deposited in the lungs[4] and quickly enter the bloodstream, causing an immediate physiological response. The introduction of these complex chemical mixtures, which routinely contain volatile organic compounds (VOCs), highly toxic aldehydes and phthalates, and other compounds that react with the ambient air to generate secondary pollutants[5] such as formaldehyde and acetaldehyde, presents a high risk to safety and health for all members of the public, regardless of any one's pre-existing sensitivities. Indeed, many of the compounds found in fragrance are considered hazardous under federal law, by the United States Environmental Protection Agency, and pursuant to, *inter alia*, California's Proposition 65.[6]

7. Plaintiffs Elliott Mayer, Karen Riggenbach, Alegra Loewenstein and Agnieszka Uminska Pilat ("Representative Plaintiffs") bring this class action against Hilton Worldwide

---

[3] In addition to SDMs of various outputs and configurations, a variety of simpler scent dispersion designs are available and are in wide use–such as ultrasonic, nebulizing, evaporative (e.g., reed diffusers using essential oils), heat and/or fan diffusers. All of these items use similarly dangerous compounds and, to the extent these methods are being employed by Defendant to distribute fragrance, their use equally violates the statutes identified herein and is sought to be enjoined by this action.

[4] Clinical studies suggest that particle adsorption to lungs is entirely dependent on particle size, with small particles (less than three microns) being capable of making it past the body's natural protections. (*See*, https://www.sciencedirect.com/science/chapter/edited-volume/abs/pii/B9780080341859500115?via%3Dihub).

[5] Air pollutants are categorized based on their origin. **Primary pollutants** are directly released into the atmosphere from an identifiable source. **Secondary pollutants**, in contrast, are not emitted directly into the air. Instead, they form in the atmosphere as a result of chemical reactions involving primary pollutants and other atmospheric components. These reactions can be triggered by various environmental conditions.

[6] Formaldehyde and acetaldehyde are considered hazardous under federal law, by United States Environmental Protection Agency, and under, *inter alia*, California's "Proposition 65" (the Safe Drinking Water and Toxic Enforcement Act of 1986; California Health & Safety Code §§ 25249.5, *et seq*.).

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

Holdings Inc. ("Defendant"), seeking remedies for Defendant's practice of employing fragrance in it facilities−despite Defendant's knowledge of the realities set forth above and the discriminatory effect of these practices. Defendant claims to offer lodging, restaurant and bar service, pool and exercise facilities to the general public, including Representative Plaintiff, and markets its facilities as being available equally to all members of that public, and yet, engages in practices that prohibit a substantial segment of that public (i.e., chemically sensitive disabled individuals) from the same benefits and opportunities of those facilities afforded to other individuals.

8. Despite actual or constructive knowledge of the toxic properties of Synthetic fragranced consumer products, Defendant flooded its common and private areas with said products, thereby showering unsuspecting customers, employees, guests and/or patrons with substances known to cause respiratory problems, headaches, skin irritation, and adverse gastrointestinal, cardiovascular and cognitive reactions.

9. For purposes of branding, manufacturing an [illusory] association between said fragranced products and the quality of Defendant's Facilities, purposes calculated singularly to maximize revenue and profitability and not to promote a healthy and safe consumer experience, Defendant exposed tens of thousands of individuals [even at a conservative estimate] to these pollutants, without warning, and without regard to the short term, long term and/or discriminatory impact upon disabled persons of Defendant's reckless conduct. Indeed, since all Synthetic fragranced consumer products contain some level of hazardous air pollutants, irritants or otherwise toxic materials,[7] as an employer and as a provider of products and services, and the various other amenities typical of businesses in its industry, Defendant was/is required to warn these unwitting victims of the unsafe conditions at its Facilities, maintain and provide Safety Data Sheets for all

[7] "Ten questions concerning air fresheners and indoor built environments," by Anne Steinemann; *See*, https://www.sciencedirect.com/science/article/pii/S0360132316304334; U.C. Riverside "Air Pollution in California" ("4.3 million people a year die from the exposure to household air pollution." Formaldehyde is a major contributor. (*See*, https://pollution.ucr.edu/indoor-air-quality).

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

such hazardous materials and/or clean up its Facilities by stopping the use of Synthetic fragranced consumer products altogether.[8]

10. Representative Plaintiffs assert Defendant had, and continues to have, a consistent policy of releasing Synthetic fragranced consumer products upon individuals as they enter Defendant's Facilities. Indeed, by the time these unsuspecting customers, employees, guests and/or patrons are aware of the pervasive scents/toxins, it is simply too late: the toxins are ingested, have landed upon the skin, have entered the lungs and, thus, entered these victims' bloodstreams and targeted various organs/systems.

11. Representative Plaintiffs aver that the effects of these Synthetic fragranced consumer products adversely affect all human beings but, for those with recognized disabilities such as fragrance/chemical and/or multiple chemical sensitivities, autism, and so on, the fear, apprehension and emotional distress of coming into contact with fragrance can be intense, as can be the physiological manifestations predictably attendant to the exposure. Even for those persons lucky enough to not possess/share chemical/fragrance susceptibility at such heightened levels, their exposure to fragrance remains, at best, an annoyance, an unwanted touching (i.e., a battery) by atomized fragrance particulates and/or a disruption to their shopping, dining, lodging and/or other services offered at the fragrance location. Indeed, the toxins with which Defendant pollutes its Facilities can be detected in all common areas thereof.

12. This action is brought to redress and end this prolonged pattern of unlawful conduct once and for all. Representative Plaintiffs, therefore, bring this action, individually, and on behalf

---

8 *See, e.g.,* 29 CFR 1910.1200(g); https://www.osha.gov/laws-regs/regulations/standardnumber/1910/1910.1200; accord, foreign OSHA regulations and agency mandates/conventions, generally, at, *inter alia*, (Ontario) Occupational Health and Safety Act, R.S.O. 1990, c. O.1; ss. 25(1), 28 and 29; European Agency for Safety & Health at Work (https://osha.europa.eu/en); The Occupational Safety and Health Convention, 1981 (No. 155) and the Promotional Framework for Occupational Safety and Health Convention, 2006 (No. 187), implemented by the International Labour Organization (Latin America) into its Declaration on Fundamental Principles and Rights at Work (1998); (South Africa) Occupational Health and Safety Act 85 of 1993 (https://view.officeapps.live.com/op/view.aspx?src=https%3A%2F%2Flabourguide.co.za%2F~documents%2Froute%253A%2Fdownload%2F1660&wdOrigin=BROWSELINK).

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

of the Classes of all persons harmed by the toxic doses of Synthetic fragranced consumer products at Defendant's Facilities. In doing so, Representative Plaintiffs, individually, and on behalf of members of the Nationwide and California Non-Unruh Classes, seeks injunctive and other equitable relief, and reasonable attorneys' fees and costs as a result of Defendant's numerous unfair, unlawful and deceptive business practices, as detailed herein, which run afoul of a multitude of state and federal laws. Additionally, individually and on behalf of members of the California Unruh Class, Representative Plaintiffs seek actual damages, subject to the Unruh Civil Rights Act's minimum statutory damage.

## JURISDICTION AND VENUE

13. Jurisdiction is proper in this Court under 28 U.S.C. § 1332 (diversity jurisdiction). Specifically, this Court has subject matter and diversity jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action where the amount in controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed Classes and, at least, one other Class Member is a citizen of a state different from Defendant.

14. Supplemental jurisdiction to adjudicate issues pertaining to state law is proper in this Court under 28 U.S.C. § 1367.

15. Defendant is located and routinely conducts business in the State where this District is located, has sufficient minimum contacts in this State and has intentionally availed itself of this jurisdiction by marketing and selling products and services, and by accepting and processing payments for those products and services within this State.

16. Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events that gave rise to Representative Plaintiffs' claims took place within this District, and Defendant does business within this District.

## PLAINTIFFS

***Representative Plaintiff Elliott Mayer***

17. Representative Plaintiff Elliott Mayer is a natural person with a physical condition which renders this individual unable to patronize, visit and/or enjoy the full and equal access to Defendant's Facilities–so long as this facility continues to expose patrons to fragranced substances (including carcinogenic and/or other hazardous air pollutants, and particulate matter).

18. At all relevant times, Representative Plaintiff Mayer suffers and continues to suffer from chemical sensitivities and, when exposed to fragrance, is substantially limited in this Representative Plaintiffs' ability to concentrate and/or breathe—which unquestionably constitute major life functions. Consequently, Representative Plaintiff Mayer is "physically disabled," as defined by all applicable California and United States laws, and a member of the public whose rights are supposed to be protected by these laws. Like all Class members, when Representative Plaintiff Mayer is exposed to fragrance, Representative Plaintiff Mayer experiences symptoms such as respiratory problems, headaches, skin irritation, and gastrointestinal, cardiovascular and cognitive problems. Representative Plaintiff Mayer must, therefore, avoid Synthetic fragranced consumer products at all costs so as to avoid experiencing adverse reactions.

***Representative Plaintiff Karen Riggenbach***

19. Representative Plaintiff Riggenbach is a natural person with a physical condition which renders this individual unable to patronize, visit and/or enjoy the full and equal access to Defendant's Facilities–so long as this facility continues to expose patrons to fragranced substances (including carcinogenic and/or other hazardous air pollutants, and particulate matter).

20. At all relevant times, Representative Plaintiff Riggenbach suffers and continues to suffer from chemical sensitivities and, when exposed to fragrance, is substantially limited in this Representative Plaintiffs' ability to concentrate and/or breathe—which unquestionably constitute major life functions. Consequently, Representative Plaintiff Riggenbach is "physically disabled," as defined by all applicable California and United States laws, and a member of the public whose rights are supposed to be protected by these laws. Like all Class members, when Representative Plaintiff Riggenbach is exposed to fragrance, Representative Plaintiff Riggenbach experiences

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

symptoms such as respiratory problems, headaches, skin irritation, and gastrointestinal, cardiovascular and cognitive problems. Representative Plaintiff Riggenbach must, therefore, avoid Synthetic fragranced consumer products at all costs so as to avoid experiencing adverse reactions.

***Representative Plaintiff Alegra Loewenstein***

21. Representative Plaintiff Loewenstein is a natural person with a physical condition which renders this individual unable to patronize, visit and/or enjoy the full and equal access to Defendant's Facilities–so long as this facility continues to expose patrons to fragranced substances (including carcinogenic and/or other hazardous air pollutants, and particulate matter).

22. At all relevant times, Representative Plaintiff Loewenstein suffers and continues to suffer from chemical sensitivities and, when exposed to fragrance, is substantially limited in this Representative Plaintiffs' ability to concentrate and/or breathe—which unquestionably constitute major life functions. Consequently, Representative Plaintiff Loewenstein is "physically disabled," as defined by all applicable California and United States laws, and a member of the public whose rights are supposed to be protected by these laws. Like all Class members, when Representative Plaintiff Loewenstein is exposed to fragrance, Representative Plaintiff Loewenstein experiences symptoms such as respiratory problems, headaches, skin irritation, and gastrointestinal, cardiovascular and cognitive problems. Representative Plaintiff Loewenstein must, therefore, avoid Synthetic fragranced consumer products at all costs so as to avoid experiencing adverse reactions.

***Representative Plaintiff Agnieszka Uminska Pilat***

23. Representative Plaintiff Uminska Pilat is a natural person with a physical condition which renders this individual unable to patronize, visit and/or enjoy the full and equal access to Defendant's Facilities–so long as this facility continues to expose patrons to fragranced substances (including carcinogenic and/or other hazardous air pollutants, and particulate matter).

24. At all relevant times, Representative Plaintiff Uminska Pilat suffers and continues to suffer from chemical sensitivities and, when exposed to fragrance, is substantially limited in this Representative Plaintiffs' ability to concentrate and/or breathe—which unquestionably

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

constitute major life functions. Consequently, Representative Plaintiff Uminska Pilat is "physically disabled," as defined by all applicable California and United States laws, and a member of the public whose rights are supposed to be protected by these laws. Like all Class members, when Representative Plaintiff Uminska Pilat is exposed to fragrance, Representative Plaintiff Uminska Pilat experiences symptoms such as respiratory problems, headaches, skin irritation, and gastrointestinal, cardiovascular and cognitive problems. Representative Plaintiff Uminska Pilat must, therefore, avoid Synthetic fragranced consumer products at all costs so as to avoid experiencing adverse reactions.

***Allegations By All Representative Plaintiffs***

25. Moreover, identical to the impact fragrance use in various businesses (including Defendant's Facilities) has on other Class members, use of fragrance has a significant economic impact on Representative Plaintiffs, and each of them, in that:

a. Representative Plaintiffs (like all Class members) will avoid, in most instances, business establishments where Synthetic fragranced consumer products are used and/or will seek to avoid certain public areas where fragrance is used;

b. Representative Plaintiffs (like all Class members) spend a considerable amount of time researching which business facilities Representative Plaintiffs might safely and fully visit and enjoy, so as to avoid coming into contact with fragrance;

c. Representative Plaintiffs (like all Class Members) spend a considerable amount of time pleading with representatives of fragranced businesses not to apply fragrance in, at least portions of, those business' facilities, such that Representative Plaintiffs might enjoy the same benefits as non-disabled persons;

d. Representative Plaintiffs (like all Class members) inadvertently travel to businesses using fragrance just to be, effectively, turned away and unable to patronize them, oftentimes at considerable expense, embarrassment and inconvenience;

e. Representative Plaintiffs (like all Class members) are limited in Representative Plaintiffs' advantages, freedoms and opportunities to interact with family, friends, business associates, etc. who may wish to meet the Representative Plaintiffs at fragranced businesses (e.g., restaurants, offices, movie theaters, and other social establishments).

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

26. As such, one can quickly see that use of fragrance is not merely physiologically debilitating, but also socially, reputationally and economically limiting, and not just to those persons who possess the specific disability.

27. As used throughout this Complaint, the terms "Class members" refers to the named/representative Plaintiffs as well as each and every person eligible for membership in one or more of the Classes, as described and defined below.

28. The Plaintiff Classes consist of all chemically sensitive/disabled persons who have attempted to shop at, visit and/or patronize Defendant's Facilities and been exposed, in some way, to chemical substances (including carcinogenic and/or other hazardous air pollutants, and particulate matter) and/or who have avoided such interactions with Defendant's Facilities as a result of the release/use of fragranced substances by Defendant.

29. At all times herein relevant, the Representative Plaintiffs, and each of them, were and now are persons within the Classes of persons described and defined herein.

30. Representative Plaintiffs bring this action on behalf of Representative Plaintiffs, individually, and as a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all persons similarly situated and proximately harmed by the unlawful conduct described herein.

**DEFENDANT**

31. Defendant is a business that maintains lodging, restaurant and bar service, pool and exercise facilities, open to the public, and its operations significantly affect interstate commerce. Defendant's Facilities are, therefore, a public accommodation, as defined by applicable state and federal laws.[9]

32. Defendant "has welcomed more than 4 billion guests in [its] more than 100-year history," with more than 9,200 properties containing more than 1.3 million rooms in 144 countries.[10]

---

[9] *See, e.g.*, 42 U.S. Code § 12182.
[10] https://www.hilton.com/en/corporate/ (last accessed May 18, 2026).

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

33. Defendant's portfolio of brands includes Waldorf Astoria Hotels & Resorts, LXR Hotels & Resorts, Conrad Hotels & Resorts, Canopy by Hilton, Signia by Hilton, Hilton Hotels & Resorts, Curio Collection by Hilton, DoubleTree by Hilton, Tapestry Collection by Hilton, Embassy Suites by Hilton, Tempo by Hilton, Motto by Hilton, Hilton Garden Inn, Hampton by Hilton, Tru by Hilton, Spark by Hilton, Homewood Suites by Hilton, Home2 Suites by Hilton, LivSmart Studios by Hilton, Graduate by Hilton, NoMad, Outset Collection by Hilton, Apartment Collection by Hilton, and Select by Hilton.[11]

34. The true names and capacities of persons or entities, whether individual, corporate, associate or otherwise, who may be responsible for some of the claims alleged here are currently unknown to Representative Plaintiffs. Representative Plaintiffs will seek leave of court to amend this Complaint to reflect the true names and capacities of such responsible parties when their identities become known.

35. Notwithstanding the specific attention toward and allegations against the foregoing location(s) of Defendant, this class action seeks remedies, as set forth below, against all of Defendant's locations in the United States. Representative Plaintiffs reserve the right to amend this pleading to add all parties that exercise control over the environmental conditions (e.g., including the introduction and use of fragrance in those Facilities) of Defendant's locations in the United States.

## CLASS ACTION ALLEGATIONS

36. Representative Plaintiffs bring this action pursuant to the provisions of Rule 23(a) and Rule 23(b)(1) and/or Rule 23(b)(2) of the Federal Rules of Civil Procedure, individually, and on behalf of the following injunctive and/or equitable relief Classes:

> The "Nationwide Class":
> All chemically sensitive (disabled) persons residing within the United States of America who, as a result of their disabled status, and due to Defendant's use of Synthetic fragranced consumer products, were denied safe, full and equal access and enjoyment to/of Defendant's Facilities, and hereby seek to

[11] https://www.hilton.com/en/p/global-privacy-statement/ (last accessed May 18, 2026).

enjoin Defendant (as set forth the Prayer for Relief herein) from using Synthetic fragranced consumer products at Defendant's Facilities.

The "California Non-Unruh Class":
All chemically sensitive (disabled) persons residing in the State of California who, as a result of their disabled status, and due to Defendant's use of Synthetic fragranced consumer products, were denied safe, full and equal access and enjoyment to/of Defendant's Facilities, and hereby seek to enjoin Defendant (as set forth the Prayer for Relief herein) from using Synthetic fragranced consumer products at Defendant's Facilities.

37. Representative Plaintiffs bring this action pursuant to the provisions of Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure, individually, and on behalf of the following damages Class:

The "California Unruh Class":
All chemically sensitive (disabled) persons residing in the State of California who, as a result of their disabled status, and due to Defendant's use of Synthetic fragranced consumer products, were denied safe, full and equal access and enjoyment to/of Defendant's Facilities, and hereby seek to recover damages from Defendant, pursuant to the Unruh Civil Rights Act.

38. Excluded from the Classes are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors and any entity in which Defendant has a controlling interest, all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out, any and all federal, state or local governments, including, but not limited to, its departments, agencies, divisions, bureaus, boards, sections, groups, counsel and/or subdivisions, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

39. Representative Plaintiffs reserve the right to amend the above definitions and/or to propose subclasses in subsequent pleadings and the anticipated motion for class certification. The "Plaintiff Class," the "Class members" or, simply, the "Classes," where such collective terms are used in this pleading, shall refer to each and all of the proposed Classes and/or Class members in the aggregate, without limitation beyond the exclusions identified in the preceding paragraph.

40. This action has been brought and may properly be maintained as a class action under Federal Rules of Civil Procedure Rule 23 because there is a well-defined community of interest in the litigation and membership in each of the proposed Classes is easily ascertainable.

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

a. Numerosity: A class action is the only available method for the fair and efficient adjudication of this controversy. The members of the Plaintiff Classes are so numerous that joinder of all members is impractical, if not impossible. Membership in the Classes will be determined by analysis of Defendant's records.

b. Commonality: Representative Plaintiffs and Class members share a community of interest in that there are numerous common questions of fact and law, including, but not necessarily limited to:

1) The duties of care and requirements imposed by law upon Defendant and whether Defendant breached those duties;

2) Whether Defendant's Facilities constitute place(s) of public accommodation, pursuant, e.g., to the Americans with Disabilities Act (e.g., 42 U.S.C. § 12182(a));

3) Whether Defendant, by its use of fragranced compounds, impairs Representative Plaintiffs and Class members, either regularly or episodically, thereby substantially limiting one or more major life activities;

4) Whether Defendant's use of fragranced compounds in commercial quantities has discriminated against and/or denied disabled segments of the population the safe, full and equal access to and/or enjoyment of Defendant's Facilities;

5) Whether Defendant's advertising of its services/goods were false, deceptive and/or misleading, including whether such conduct violated California Business and Professions Code §§ 17500, *et seq.*;

6) Whether Defendant violated California Civil Code §§ 1750 and/or 1770, *et seq.* by representing that its services/goods had/have characteristics, uses and/or benefits which they do/did not have, and/or representing that they were of a particular standard, quality or grade;

7) Whether Defendant violated California Business and Professions Code §§ 17200, *et seq.* by engaging in unfair, unlawful and/or fraudulent business practices;

8) The toxicological properties of the various chemical substances described herein and/or their breakdown products;

9) Whether Defendant is liable for payment of Representative Plaintiffs' counsel's attorneys' fees and costs under the Americans with Disabilities Act, Unruh Civil Rights Act, False Advertising Act (Cal. Business & Professions Code §§ 17500, *et seq.),* Consumers Legal Remedies Act and/or the California Unfair Competition Law; and

10) Whether injunctive, corrective and/or declaratory relief and/or an accounting is/are appropriate.

c. Typicality: Representative Plaintiffs' claims are typical of the claims of the Classes. Representative Plaintiffs and all members of the Classes suffered harms arising out of and caused by Defendant's common course of conduct in violation of law, as alleged herein.

d. Adequacy of Representation: Representative Plaintiffs in this class action are adequate representatives of each of the Classes in that the Representative Plaintiffs have the same interest in the litigation of this case as the remaining Class members, are committed to vigorous prosecution of this case and have retained competent counsel experienced in conducting litigation of this nature. Representative Plaintiffs are not subject to any individual defenses unique from those conceivably applicable to other Class members. Representative Plaintiffs anticipate no management difficulties in this litigation.

e. Predominance (Applicable to California Unruh Class Only): With regard to the claims brought pursuant to the Unruh Civil Rights Act, there exist numerous common questions of fact and law which predominate over any questions and issues solely affecting individual members of this proposed Class.

f. Superiority of Class Action (Applicable to California Unruh Class Only): Since the damages suffered by individual Class members, while not inconsequential, may be relatively small, the expense and burden of individual litigation by each member makes or may make it impractical for members of the California Unruh Class to seek redress individually for the wrongful conduct alleged herein. Should separate actions be brought or be required to be brought by each individual member of the California Unruh Class, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants. The prosecution of separate actions would also create a risk of inconsistent rulings which might be dispositive of the interests of the California Unruh Class members who are not parties to the adjudications and/or may substantially impede their ability to adequately protect their interests.

41. Class certification is proper because the questions raised in this Complaint are of common or general interest affecting numerous persons, such that it is impracticable to bring all Class members before the Court.

42. The Classes also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to all Class members, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward Class members and making final injunctive relief appropriate with respect to the injunctive relief Classes in their entireties. Defendant's policies and practices challenged herein apply to and affect those Class members uniformly and Representative Plaintiffs' challenge of these policies and practices hinges

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

on Defendant's conduct with respect to the injunctive relief Classes in their entireties, not on facts or law applicable only to Representative Plaintiffs.

43. Unless a Class-wide injunction is issued, Defendant may continue to improperly put in jeopardy and/or harm Class members' health, safety and rights, and Defendant may continue to act unlawfully, as set forth in this Complaint.

44. Further, Defendant has acted or refused to act on grounds generally applicable to the Classes and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class members of the Nationwide Class and the California Non-Unruh Class is appropriate under Rule 23(b)(1) and/or Rule 23(b)(2) of the Federal Rules of Civil Procedure.

**FRAUDULENT CONCEALMENT/TOLLING**

45. To the extent Defendant affirmatively concealed from Representative Plaintiffs and Class members that Defendant was releasing toxic chemicals and particulates and/or concealed the effects of these toxic chemicals and particulates, the time within which such legal action must be brought was tolled. Representative Plaintiffs aver that Defendant, at all times, had full knowledge of the dangerous nature of said compounds and permitted same to continue unabated for years.

46. Defendant had, at all times, a duty to inform Representative Plaintiffs and Class members of the dangers posed by these toxic chemicals and particulates. Specifically, Defendant knew and/or should have known (either by questioning its fragranced product suppliers, its own review of the available literature/studies[12] about fragrance, indeed even attention to the

[12] *See*, collecting footnotes throughout this pleading (e.g., fn. 19, *infra*); *see also*, https://link.springer.com/article/10.1007/s00420-007-0282-0); https://www.govinfo.gov/content/pkg/GOVPUB-L41-PURL-gpo9380/pdf/GOVPUB-L41-PURL-gpo9380.pdf; Duties of employers and employees (29 U.S.C. § 654); Fragrance Sensitivities Raise Bouquet of Legal Issues (https://www.shrm.org/topics-tools/employment-law-compliance/fragrance-sensitivities-raise-bouquet-legal-issues); "Fragrance Disclosure"; Campaign for Safe Cosmetics (a program of Breast Cancer Prevention Partners) (*see*, https://www.safecosmetics.org/resources/health-science/fragrance-disclosure/); see also; Steinemann AC, et al. (2010). Fragranced consumer products: Chemicals emitted, ingredients unlisted. Environ. Impact Asses. Rev., doi:10.1016/j.eiar.2010.08.002; Ayuk-Takem L, Amissah F, Aguilar B, Lamango N. (2014). Inhibition of polyisoprenylated methylated protein methyl esterase by synthetic musks induces cell degeneration. Environmental Toxicology, 29(4), pp.

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

proliferation of television ads promoting "fragrance free" products) that Synthetic fragranced consumer products contain as many as dozens of volatile compounds derived from petrochemicals—which are dangerous to all persons, and are especially dangerous to persons possessing particular disabilities.

47. Despite the ability of Synthetic fragranced consumer products to, in many occasions, mask mold and other unpleasant smells which Defendant may not want its patrons to notice, Defendant maintained an obligation to research, discover and disclose to its customers and employees the toxic properties of Synthetic fragranced consumer products used in Defendant's Facilities.

48. In many situations, Class members could not have reasonably discovered the toxic nature of these chemicals and particulates or Defendant's attempts to avoid disclosure of it. Thus, the running of the applicable statutes of limitation, in those situations, has been tolled with respect to any claims that Class members could have brought as a result of the unlawful or fraudulent course of conduct described herein.

49. In addition, Defendant is estopped to plead any statute of limitations to the extent it failed to disclose facts that it was obligated to disclose concerning its Facilities. Defendant actively concealed and misrepresented to Representative Plaintiffs and Class members. Had Class members been aware of the facts which Defendant misrepresented and concealed, they likely would have commenced suit against Defendant before the running of any statute of limitations alleged to be applicable to this case.

466-477; Congress, U. S. (1990). Office of Technology Assessment, Neurotoxicity: Identifying and controlling poisons of the nervous system. OTA-BA-436. Washington, DC: US Government Printing Office.

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

## COMMON FACTUAL ALLEGATIONS

**The Nature and Harm of Synthetic Fragrance**

50. Contrary to popular belief, most exposure to hazardous pollutants which affect human health and well-being occurs indoors. A primary source of these indoor pollutants and exposures is Synthetic fragranced consumer products.

51. As detailed above, Synthetic fragranced consumer products are complex mixtures of dozens of volatile compounds, most of which being derived from petrochemicals. Synthetic fragranced consumer products are oft-used in, e.g., hotels, older retail establishments, business in high humidity areas to mask odors including dangerous mold (such as where mold has accumulated in the HVAC ductwork or in carpeted areas) and to promote a signature smell.

52. However, despite their popularity among some people, Synthetic fragranced consumer products can and often do emit hundreds of volatile organic compounds (VOCs) including asthmagens and hazardous air pollutants. Indeed, in gas chromatography/mass spectrometry analyses of Synthetic fragranced consumer products, the most commonly emitted compounds were toxic chiral terpenes (e.g., limonene, alpha-pinene, and beta-pinene). Comparing emissions from fragranced and fragrance-free versions of the same products proves this: chiral terpenes are detected in fragranced versions but not in fragrance-free versions. In addition to being primary pollutants, these terpenes react with ozone in the ambient air to generate secondary pollutants such as formaldehyde.

53. Fragrance itself is a known respiratory irritant and neurological toxin, and roughly one-third of people in the United States experience noticeable adverse health effects from Synthetic fragranced consumer product exposure. The problem with Synthetic fragranced consumer products is not the particular *scent* itself (which, to some people, may seem pleasing) but the *properties of synthetic chemicals* from which that scent is derived, such as petroleum or coal tar. Fragranced consumer products emit volatile organic compounds (VOCs) that can react with oxidants in indoor air, such as ozone, to form secondary pollutants, including formaldehyde, acetaldehyde, ultrafine particles, and secondary organic aerosols. Indeed, almost one-third of the chemical additives used in perfume are known to be toxic—not a surprise since, over the last half

century, 80-90% of fragrances have been synthesized from petroleum, a percentage which some scientists estimate as being as high today as 95%.[13]

**<u>Everyone is Susceptible to Harm from Fragrance</u>**

54. 34.7% of Americans report immediately noticeable adverse health effects when exposed to Synthetic fragranced consumer products[14] such as those piped in through Defendant's HVAC system and/or through its use of SDMs, and it should come as no surprise: again, studies show that over 95% of chemicals found in Synthetic fragranced consumer products derive from petrochemicals including benzene derivatives, aldehydes and phthalates—all of which are highly

---

[13] "*See*, Chapter 13 - Nanomaterials in fragrance products ("According to the report of National Academy of Sciences 95% of chemicals used in synthetic fragrances are derived from petroleum and include benzene derivatives, aldehydes, toluene, and many carcinogenic compounds.") (https://www.sciencedirect.com/topics/materials-science/fragrance?__cf_chl_tk=fX6nPaYRMXvXRtj9iYIQf6mfMqOuS8wCu2AFq188FzQ-1772471618-1.0.1.1-6H15dxsE777RmJsZJcmE32kSCwRccejN1Pzh.pY3_GA).

[14] Endocrine-disrupting chemicals (EDCs) are natural or human-made chemicals that may mimic, block, or interfere with the body's hormones, which are part of the endocrine system. These chemicals are associated with a wide array of health issues. According to the Endocrine Society, 1,000 or more human-made chemicals could be endocrine disruptors (e.g., Atrazine, Bisphenol A (BPA), Phthalates and Triclosan). Also, while unnecessary to show that injunctive relief and/or the statutory damages available pursuant to the Unruh Civil Rights Act are warranted here, it is worthy to note that numerous sources link fragrance to the onset of asthma symptoms (*See*, https://www.ewg.org/news-and-analysis/2017/12/avoiding-common-household-asthma-triggers).

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

toxic—the latter being a known endocrine disruptor[15] and, the others, potential carcinogens (e.g., leading to breast cancer)[16] and/or being linked to birth defects.[17]

55. A depiction of ordinary fragrance composition appears in Figure 1, below:




***Figure 1: c/o Breast Cancer Prevention Partners***

---

[15] According to one environmental organization, about 75% of all products containing 'fragrance' contain **phthalates**, which are particularly dangerous for women of childbearing age, with endocrine disruption leading to birth defects or developmental disorders. *See, e.g.,* Zarean, M., Davoodi, S., Keikha, M., *et al.* Maternal exposure to specific endocrine-disrupting chemicals and gestational diabetes mellitus: systematic review and meta-analysis. *Sci Rep* 15, 23487 (2025). (https://doi.org/10.1038/s41598-025-05049-2); Synthetic Endocrine Disruptors in Fragranced Products | MDPI (https://www.mdpi.com/2673-396X/5/3/27); Right to Know: Exposing toxic fragrance chemicals in beauty, personal care and cleaning products (https://bcpp.org/wp-content/uploads/2018/09/BCPP-Right-to-Know-Secret-Toxic-Fragrance-Chemicals-Report_Executive-Summary_26-Sep-2018.pdf.

[16] *See*, https://www.bcpp.org/resource/fragrance/ ("IFRA's 2011 published list of 4,000 possible fragrance ingredients used to formulate fine fragrances, fragranced cosmetics and personal care products includes chemicals listed as carcinogens by California's Prop. 65 Program and the National Toxicology Program (NTP) such as benzophenone, methyleugenol and styrene […] BCPP's Right to Know report test of 100 personal care products and 40 cleaning products revealed the possible carcinogens beta-myrcene, benzophenone, and DEHP and endocrine disrupting compounds including DEP, oxybenzone, octinoxate and galaxolide).

[17] *See*, https://oehha.ca.gov/proposition-65/proposition-65-list; *See also*, Breast Cancer Prevention Partners "Fragrance Disclosure" at https://www.safecosmetics.org/resources/health-science/fragrance-disclosure/ ("…the scientific literature and previous product testing indicated that fragranced products contained chemicals linked to cancer, birth defects, hormone disruption and other adverse health effects.").

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

56. Studies also reveal that Synthetic fragranced consumer products can emit hundreds of different volatile organic compounds (VOCs), some as "primary pollutants," and others that react with the ambient air to generate "secondary pollutants" such as formaldehyde and acetaldehyde[18] (both compounds considered potentially toxic or hazardous under federal law as well as California's "Proposition 65" (i.e., the Safe Drinking Water and Toxic Enforcement Act of 1986; California Health & Safety Code §§ 25249.5, *et seq*.).

57. According to one survey, roughly a dozen compounds commonly found in fragrances appear on The Office of Environmental Health Hazard Assessment's Proposition 65 Carcinogens and Reproductive Toxicants list.[19] Another survey revealed that 54 compounds commonly found in fragrances appeared on the California Department of Toxic Substances Control Candidate Chemical List.[20] The United States Environmental Protection Agency has further concluded that some compounds commonly found in fragrances (e.g., synthetic musk) were "toxicologically significant." Synthetic fragranced consumer products, in particular, are extremely pervasive, lodging themselves not only in the bloodstream but also in breast milk and fat-storing tissue. When fragrances hit the air, they break down, mix with other pollutants and form new compounds—ones often more irritating and allergenic than the original fragrance.

58. Various national and multi-nation studies have examined the prevalence of fragrance sensitivity and the results are staggering:

- 26.8% of adults suffer from asthma/asthma-like conditions and, according to one study, 57.8% of them reported adverse health effects from exposure to Synthetic fragranced consumer products, and 62.8% reported being further disabled (e.g., lost work time and/or a job) thereby.[21] 39.7% of this sub-population report that they want to leave a business as quickly as possible after entering it if they smell air fresheners or Synthetic fragranced consumer products,

---

[18] Acetaldehyde, which can be both a primary and secondary product of air fresheners and air dispersion units, is associated with both acute and chronic hazards to the respiratory tract and is classified as a carcinogenic hazardous air pollutant in the United States.

[19] *See*, https://oehha.ca.gov/proposition-65/proposition-65-list.

[20] *See*, http://www.womensvoices.org/2015/12/10/toxic-chemicals-found-in-fragrance/.

[21] *See*, https://www.law.cornell.edu/uscode/text/42/12102; https://doi.org/10.1007/s11869-019-00693-w.

and 43.9% of them have been prevented from going someplace simply because they predict they would be exposed to Synthetic fragranced consumer products that would make them sick;[22]

- 27.5% of American adults suffer from Chemical Sensitivity[23] and/or Multiple Chemical Sensitivity ("MSC"). According to one study, 78.9% of this vulnerable sub-population reported adverse health effects from exposure to Synthetic fragranced consumer products. Results also found that 28.6% of individuals with Chemical Sensitivity have lost workdays or a job, in the past year, due to exposure to Synthetic fragranced consumer products in the workplace;[24]
- 34.7% of adult Americans suffer from Fragrance Sensitivity[25] with or without an asthma diagnosis;
- 4.3% of the American population suffers from Autism/ASDs, of which 79.6% also report suffering from Chemical Sensitivity and 83.7% from Fragrance Sensitivity;
- Asthma, Chemical Sensitivity, and Multiple Chemical Sensitivity are considered "disabilities" for purposes of the Americans with Disabilities Act,[26] as well as pursuant to California Government Code Section 12926(m)(1).

---

[22] International prevalence of chemical sensitivity, co-prevalences with asthma and autism, and effects from fragranced consumer products (https://link.springer.com/article/10.1007/s11869-019-00672-1); Hundreds of millions of people globally suffering from fragrance allergies. *See*, Schnuch, A., Lessmann, H., Geier, J., Frosch, P. J. and Uter, W. (2004) Contact allergy to fragrances: Frequencies of sensitization from 1996 to 2002. Results of the IVDK. Contact Dermatitis. Vol. 50. pp. 65-76. 2004. Schafer, T., Bohler, E., Ruhdorfer, S., Weigl, L., Wessner, D. Filipiak, B., Wichmann, H.E. and Ring, J. (2001) Epidemiology of contact allergy in adults. Allergy. Vol. 56. pp: 19992- 1996. 2001; *see also*, Simonsen, A.B., Deleuran, M. Johansen, J. D. and Sommerlund, M. (2011) Contact allergy and allergic contact dermatitis in children — a review of current data. Contact Dermatitis. Vol. 65. Pp: 254-265. 2011.

[23] Chemical Sensitivity and/or Multiple Chemical Sensitivity are medical conditions characterized by adverse health effects from exposure to common chemical pollutants and products. Multiple Chemical Sensitivity: A 1999 Consensus (https://www.tandfonline.com/doi/abs/10.1080/00039899909602251).

[24] Weinberg J.L., Flattery J, Harrison R (2017) Fragrances and work-related asthma–California surveillance data, 1993–2012. J Asthma:1–10.

[25] "Fragrance sensitivity" is a health condition characterized by adverse effects from exposure to fragranced consumer products. *See, e.g.*, https://askjan.org/disabilities/Fragrance-Sensitivity.cfm.

[26] 42 U.S. Code §§ 12101, *et seq*. (https://www.law.cornell.edu/uscode/text/42/12102).

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

59. Exposure to fragrance can cause such symptoms as (a) migraine headaches, (b) asthma attacks, (c) neurological problems (e.g., dizziness, seizures, head pain, fainting, loss of coordination), (d) respiratory problems (e.g., difficulty breathing, coughing, shortness of breath), (e) skin problems (e.g., rashes, hives, red skin, tingling skin, dermatitis), [27] (f) cognitive problems (e.g., difficulties thinking, concentrating, confusion or memory recall), (g) mucosal symptoms (e.g., watery or red eyes, nasal congestion, sneezing), (h) immune system problems (e.g., swollen lymph glands, fever, fatigue), (i) gastrointestinal problems (e.g., nausea, bloating, cramping, diarrhea), (j) cardiovascular problems (e.g., fast or irregular heartbeat, jitteriness, chest discomfort) and (k) musculoskeletal problems (e.g., muscle or joint pain, cramps, weakness).[28]

60. Even for persons not experiencing immediately noticeable physical reactions to fragrance inhalation/contact, customers, employees, guests and/or patrons of various business facilities experience an annoyance and an unwanted touching (which also constitutes a battery) from fragranced compounds/particulates, emotional distress, long lasting migraines, a loss of smell and taste (these latter effects being particularly frustrating for persons visiting, e.g., restaurants, wineries, etc.

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

**Organizational Reactions to Fragrance**

61. While still prevalent in some workplaces, restaurants, hotels and other public accommodations, many organizations and governmental agencies have taken and continue to take bold steps toward eradicating toxic fragrances in their own workplaces, some even offering guidance to other entities regarding how to follow suit.

62. For example, the United States Department of Health & Human Services issued an Indoor Environmental Quality Policy prohibiting Synthetic fragranced consumer products and

---

[27] According to the American Academy of Dermatology (AAD), fragrances are considered the leading cause of cosmetic contact dermatitis (https://www.webmd.com/allergies/features/fragrance-allergies-a-sensory-assault#1). As a health problem, fragrance sensitivity affects millions of people, and studies suggest that sensitivity is on the rise. Moreover, fragrances were named "allergen of the year" for 2007 by the American Contact Dermatitis Society.

[28] *See*, https://link.springer.com/article/10.1007%2Fs11869-017-0536-2.

fragrance-emitting devices in all interior space owned, rented, or leased by the Centers for Disease Control and Prevention nationwide. As that policy explains,

> "[v]olatile organic compounds (VOCs) are certain organic chemicals that are emitted as gases, often having short- and long-term adverse health effects (see definition in 40 C.F.R. 51.100 (s)). To the fullest **extent** feasible, products (such as fragrances) emitting VOCs are prohibited at all times in all interior space owned, rented, or leased by CDC. Moreover, fragranced products and fragrance-emitting devices of any kind are prohibited at all times in all interior space owned, rented, or leased by CDC. Fragrance is not appropriate for a professional work environment, and the use of some products with fragrance may be detrimental to the health of workers with chemical sensitivities, allergies, asthma, and chronic headaches/migraines."[29]

63. Similarly, other governmental[30] and private entities, [31] both within the United States and abroad, with high subject matter expertise on the topic have increasing condemned fragrance use in the workplace, recognizing instead the need to adopt clean, fragrance-free environments for citizens and workers.[32] Indeed, the simple act of watching television these days—and noting the uptick in "fragrance fee" advertisements—makes obvious the growing awareness of fragrance's

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

---

[29] *See*, https://www.chemicalsensitivityfoundation.org/pdf/CDC-2009-Indoor-Environmental-Quality-internal-policy542.pdf.

[30] Representative Plaintiff reserves the right to amend this Complaint to allege a violation of California Health & Safety Code §§ 10895, *et seq*. (a.k.a., the Cleaning Product Right to Know Act of 2017), to the extent that further discovery reveals the fragranced products released by Defendant constitutes "Air care product(s)" (§108952(a)). Representative Plaintiff further reserves the right to amend this Complaint to allege a violation of the Safe Drinking Water and Toxic Enforcement Act of 1986 (California Health & Safety Code §§ 25249.5, *et seq*.), a.k.a., "Proposition 65."

[31] American Lung Association Sample Fragrance Free Policy for employers at http://action.lung.org/site/DocServer/fragrance-free-workplace.pdf.

[32] A keyword search for "fragrance" on the Job Accommodation Network (JAN) of the Office of Disability Employment Policy yields no fewer than 130 articles on the topic, most of which discussing how to eradicate fragrances from the workplace and using fragrance-free policies as a disability accommodation. *See also*, discussion of problems with fragrance exposures in the workplace (National Institute of Occupational Safety and Health (NIOSH) article, at https://www.cdc.gov/niosh/topics/indoorenv/ChemicalsOdors.html); Canadian Centre for Occupational Health & Safety statement re: fragrance-free workplaces (https://www.ccohs.ca/oshanswers/hsprograms/scent_free.html); (Ontario) Occupational Health and Safety Act, R.S.O. 1990, c. O.1; ss. 25(1), 28 and 29; Massachusetts Nurses Association fragrance free policy sheet (https://www.massnurses.org/health-and-safety/articles/chemical-exposures/p/openItem/1346). *See generally*, Environmental Health Network (http://ehnca.org/) for references to other fragrance-free workplace policies.

toxic properties or, at least, its annoyance to a large segment, if not the entirety, of the population. Not unlike the long lag time between knowledge of the dangers of second-hand smoke and the resulting smoking bans, the public's outcry against Synthetic fragranced consumer products has apparently been ignored by Defendant.

**<u>Defendant's Knowing Operation of Unsafe Facilities</u>**

64. Defendant's release of harmful compounds upon the unsuspecting public was hardly an accident. Large facilities, like that operated by Defendant, generally maintain elaborately zoned HVAC systems, designed to maintain optimal environmental conditions for Defendant's customers, employees, guests and/or patrons. For those facilities wanting to integrate fragrance into those systems, a number of commercial scent dispersion machines are available to produce a particular (sometimes even "signature") scent—which (per their marketing pitches) promise to enhance the customers', employees', guests' and/or patrons' experience.

65. Some of these devices are depicted in Figure 2, below:




***Figure 2: Scent Dispersion Machines***

66. The manufacturers of SDMs and/or their partner organizations produce air supply tubes (depicted below) containing concentrated fragrance for use with SDMs. Assisted by the particular facilities' HVAC system, SDMs and air supply tubes deliver a steady stream of toxic compounds to pre-selected zones within the facilities.

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

67. At Defendant's Facilities, either through use of these SDMs or portable versions thereof, or ultrasonic, nebulizing, evaporative (e.g., reed diffusers using essential oils), heat and/or fan diffusers, these toxic compounds are aimed by Defendant directly at customers, employees, guests and/or patrons as they walk through Defendant's Facilities' front door and/or in other common and private areas.

68. In systems incorporating/utilizing an HVAC system (for more widespread dispersion), a rudimentary depiction of the process is shown in Figure 3, below:




***Figure 3: HVAC Dispersion Process***

69. In systems incorporating/utilizing smaller SDMs (e.g., for narrower dispersion and/or for smaller facility footprints) ultrasonic, nebulizing, evaporative (e.g., reed diffusers using essential oils), heat and/or fan diffusers are also available, examples of which being depicted in Figure 4, below:



***Figure 4: Examples of small SDM units and/or Alternative Dispersion Methods***

70. Vis-à-vis this equipment and process, customers, employees, guests and/or patrons can be assured a dose of toxins purportedly marketed to enhance customers', employees', guests' and/or patrons' experience, but likely to cause skin, respiratory, gastrointestinal, cognitive and other harms.

71. When used in environments like Defendant's Facilities the above-depicted equipment and process is often utilized to mask odors such as mold smells (such as where mold has accumulated in the HVAC ductwork or in carpeted areas) and to promote a signature scent.

72. Although there are available a multitude of pre-designed/generic scents offered in the form of Synthetic fragranced consumer products, many of the scents are customized for specific clients to enhance their branding.

73. A few of these commissioned aromas are depicted in Figure 5, below:[33]




***Figure 5: Examples of Signature Scents***

[33] A marketplace exists for individuals and business wishing to emulate the "signature scents" already in use at, e.g., popular hotels and other providers of goods and services. *See, e.g.,* https://www.hotelcollection.com/; https://aroma360.com/collections/; https://signaturescents.com/hotel-fragrances/; https://shop.marriott.com/shop/fragrance/; https://www.scentiment.com/pages/hotels. Clearly, the identification alone of a fragrance as a "signature scent" suggests an endorsement by the initially scent-branded business, not to mention an association of safety and quality of the fragrance matching the perceived safety and quality of the scent-branded business.

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

74. And yet, while Synthetic fragranced consumer products like these are widely touted as tools for enhancing customer experiences and maximizing corporate profitability, most members of the public do not want fragrance in their workplaces, in hotels, on airplanes and/or in other closed areas.[34] As a result, the injunctive relief sought herein, while primarily sought to protect Class members and future visitors and staff of Defendant's business establishment, satisfies a desire that most people already possess.

75. Defendant knew and/or had reason to know of the dangerous conditions it was creating and foisting upon Class members—and of the heightened risks naturally attendant to such a condition, including the foreseeable risk of emotional and physical harm to Class members.

76. Having not likely researched in depth the composition of fragrance, the dangers from exposure thereto, or the use of it by Defendant, a reasonable consumer would not expect nor have any way of knowing Defendant was using Synthetic fragranced consumer products in its Facilities and/or otherwise exposing members of the public to toxic compounds. Indeed, a reasonable person would expect that Defendant would not engage in the practices detailed in this Complaint and/or that Defendant would warn them of the use of Synthetic fragranced consumer products and its potential harms before luring the public onto its premises and/or charging them money for Defendant's products/services.

77. Nowhere on any of Defendant's social media, website, or other advertising platforms is there any mention of the harms of fragrance, vis-à-vis which the public could make informed decisions about whether to access Defendant's Facilities. What's more, the fact that Defendant's use of Synthetic fragranced consumer products in its Facilities is not mentioned at all of its advertising platforms is also evidence that the public is not likely seeking out a fragranced experience when patronizing Defendant's Facilities. In other words, if use of Synthetic fragranced

[34] A reported 53.1% of Americans are supportive of fragrance-free policies for workplaces—a number that rises to well over 70% for persons with chemical sensitivity. Among the general population (groups studied in the United States, Australia, United Kingdom and Sweden), if given a choice between staying in a hotel with or without fragranced air, 60.7% of those surveyed reported they would prefer a hotel without fragranced air. (*See*, https://www.sciencedirect.com/science/article/pii/S0360132319302148?via%3Dihub#sec7).

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

consumer products was truly perceived by Defendant as a "selling point" to potential customers, both logic and good marketing practice dictate that Defendant would likely make the fragrance feature of its Facilities better known to all people considering patronage thereof.

78. The fact that many companies sell their "signature scents" in their gift shops, spa centers, through on-line portals, etc. further bolsters the message that fragrance is safe when it is, in fact, not safe.

**The Falsity of Defendant's Advertising and Its Knowledge Thereof**

79. On its website, Defendant touts that "[p]roperties operating under a Hilton brand have various accessible features in common areas and accessible rooms to serve guests with disabilities."[35]

80. On its website, Defendant promises "[a]ccessible features," including accessible business centers, elevators, exercise facilities, hotel restaurants, meeting spaces, registration and concierge desks, and routes throughout the hotel.[36]

81. As detailed above, Defendant has made and continues to make various representations about the accessibility and quality of its Facilities. These statements are clear and unambiguous: consumers can and should depend on Defendant's Facilities being safe and accessible to all. Given this, none of the statements made by Defendant could reasonably be considered mere "puffery," insofar as those representations express specific assertions about a clean environment in its Facilities, available for use by all persons, free of discrimination.

82. Further, Defendant is an experienced and sophisticated employer and proprietor of a public accommodation, experienced in managing and operating the Facilities involved in this litigation. On information and belief, Representative Plaintiffs aver that Defendant tested (and/or received information regarding testing results) and/or otherwise evaluated the fragrance compounds at issue prior to introducing them into Defendant's Facilities. The fact that Defendant may have unilaterally concluded that these chemicals smelled pleasant is no excuse for

[35] https://www.hilton.com/en/help-center/hotel-information/accessible-features-and-rooms/ (last accessed May 19, 2026).
[36] *Id.*

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

introduction toxic materials into its Facilities and then failing to tell anyone about them until it is too late to avoid their consequences. Due to the inherently dangerous nature of these fragranced compounds Defendant purchased and foisted upon its employees and the public, and Defendant's obligation to research the fragrances' potential health risks, Defendant must know its use of fragrance presented substantial health risks to all patrons and workforce members and rendered its Facilities inaccessible to the chemically disabled.

83. Defendant designed, ordered and/or tested its Synthetic fragrance systems. Incorporation of SDMs and other fragrance systems into building utilities requires scrupulous consideration for the space, ventilation, and volume of Synthetic fragranced consumer products needed to achieve the Defendant's desired effect. Defendant's selection of a specific fragrance product implies an exchange of information between Defendant and the manufacturer and/or distributor thereof regarding the chemical components and associated safety risks of various fragrance options.

84. While Defendant ostensibly invited Representative Plaintiffs and Class Members onto Defendant's Facilities, it did so with full knowledge of the potential effects of these Synthetic fragrance systems. Indeed, Defendant touted its Facilities as being of safe quality and providing safe, full and equal access and enjoyment to/by all persons when. in fact, said Defendant's Facilities' possessed these defects.

85. Defendant knew or should have known that the composition of materials used in its Synthetic fragrance diffusion system(s) were inappropriate for exposure to Class Members and had a chilling effect on patronage by the chemically disabled community.

86. Defendant's discriminatory conduct was uniform as to all Class Members in that Defendant denied full and equal access and enjoyment thereto and, to those Class Members who, for whatever reason, were compelled to patronize Defendant's Facilities anyway, Defendant's conduct uniformly caused them harm.

87. Despite Defendant's knowledge that its Facilities were defective and denied full and equal access and enjoyment to Class Members, Defendant continues to offer dangerous accommodations, services and/or goods.

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

**<u>The Public's Reliance on Safe Conditions at Defendant's Facilities</u>**

88. Consumers routinely rely on advertising, including websites and social media posts published by businesses, in making purchasing decisions about that business' good and services.

89. Representative Plaintiffs and the Class members were among the intended recipients of Defendant's deceptive representations and omissions.

90. Defendant's false, misleading, and deceptive misrepresentations and omissions were intended to deceive and mislead, and are likely to continue to deceive and mislead, Representative Plaintiffs, Class members, reasonable consumers, and the general public.

91. Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information (e.g., that Defendant operated its Facilities in a non-discriminatory manner) and would be induced to act upon such information in making purchase decisions. As such, Representative Plaintiffs' and Class members' reliance upon such representations and omissions may be presumed as a matter of law. The materiality of those representations and omissions also establishes causation between Defendant's conduct and the injuries sustained by Representative Plaintiffs and Class members.

92. In each situation whereby Class members sought to patronize Defendant's Facilities, they reasonably relied, to their detriment, on Defendant's reasonable level of care to ensure the premises were safe for entry. Conversely, in each situation whereby Class members decided not to patronize Defendant's Facilities due to Defendant's fragrance use, it was because Class members rightfully elected not to subject themselves to harm. In all such situations, however, Class members were deprived of the right to safe, full and equal access and enjoyment of Defendant's place of public accommodation.

93. As a direct and proximate result of Defendant's unfair and wrongful conduct, as set forth herein, and in addition to the unequally accessible condition of Defendant's Facilities (i.e., for which the injunctive relief is warranted), Representative Plaintiffs and Class members (1) were misled into pursuing and paying for the Defendant's services and goods, (2) received goods and services that failed to meet their reasonable expectations and Defendant's promises, (3) were subjected to an experience that was other than what was represented by Defendant and that

Representative Plaintiffs and Class members did not expect or give informed consent to, (5) were subjected to a potential hazard without due notice which they were, therefore, unable to give consent to, and suffered the inherently detrimental effects thereof.

94. Defendant, at all times, knew that Representative Plaintiffs and Class members would consider the general safety and adequacy of air quality in Defendant's Facilities to be material in their purchasing decisions, and would rely upon the misrepresentations and/or omissions of Defendant in those decisions. Defendant's concealment, misbranding and non-disclosure were intended to influence consumers' purchasing decisions and were done with reckless disregard for the rights of consumers. Representative Plaintiffs' and Class members' reliance and resultant substantial monetary loss were reasonably foreseeable by Defendant, as notice of the detrimental health effects of these fragrances is well-documented.

95. This action is brought to redress and end Defendant's pattern of unfair and wrongful conduct. Indeed, without imposition of injunctive relief by this Court, Defendant is likely to continue to injure consumers and harm the public interest.

96. In fact, as of the date of filing this Complaint, other businesses across the United States are decommissioning centralized fragrance dispersion from their HVAC systems and are even advertising fragrance free accommodations, services and goods. Even if, during the pendency of this litigation, Defendant elected to remove the fragrance dispersion system from its Facilities' HVAC system, Defendant is not *presently* enjoined from and would not be judicially directed against resuming operation of such to, *inter alia*, reduce cleaning costs and labor expenses, hide unpleasant odors to create a false perception of cleanliness and/or to enhance its branding. Accordingly, Representative Plaintiffs seek declaratory and injunctive relief to ensure Defendant has, in fact, removed any and all of the fragrance systems from Defendant's Facilities, and to prevent Defendant from resuming the use of these Synthetic fragranced consumer products in the future.

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

**<u>For Class Members Already Aware of Defendant's Fragrance Use, They Are Not Again Required to Subject Themselves to Harm to Prove Discrimination</u>**

97. As detailed further in this Complaint, the Americans with Disabilities Act provides, at 42 U.S.C. § 12182(a), that:

> "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."

and, at 42 U.S.C. § 12182(b)(1)(A), that:

> "(i) It shall be discriminatory to subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.
>
> (ii) It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals.; and
>
> (iii) It shall be discriminatory to provide an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals, unless such action is necessary to provide the individual or class of individuals with a good, service, facility, privilege, advantage, or accommodation, or other opportunity that is as effective as that provided to others."

98. Further prohibitions against and definitions of the types of exclusionary conduct by Defendant are iterated in the Americans with Disabilities Act at 42 U.S.C. §§ 12182(b)(1)(B) and 12182(b)(2)(A).

99. In light of these provisions, Defendant's violations of law are inherent in its design and/or use of fragrance in Defendant's Facilities, independent of whether disabled persons have already visited same or attempted to visit same. In short, Defendant's discriminatory conduct exists by virtue of a fragrance practice that effectively blocks this protected (i.e., disabled persons)

classification from safe, full and equal access and enjoyment of Defendant's place of public accommodation. 42 U.S.C. § 12182. Class members need to not subject themselves to personal risk and harm so as to evidence or perfect their rights against this pattern of discrimination.

**Representative Plaintiffs and Class Members Suffered Harm, Including Unequal Access to Defendant's Public Accommodations**

100. As set forth in detail herein, Representative Plaintiffs and Class members suffered harm as a direct result of Defendant's actions.

101. Defendant's use of hazardous chemicals constitutes a defect in Defendant's Facilities which unlawfully limits/prevents equal access thereto for Representative Plaintiffs and Class members. In addition, because of the respiratory harm that actually has and/or will occur due to the presence and exposure to the hazards described herein, there is a serious risk to the long-term health of Representative Plaintiffs and Class members should they knowingly or unwittingly visit Defendant's Facilities when fragrance is present. Development of asthma and chronic obstructive pulmonary diseases (COPD) have been associated with such exposure, leading to pain, suffering, decreased productivity and unrealized potential.[37] To the extent Class members are aware of these associations, their decisions to avoid Defendant's Facilities are especially legitimate.

102. The injuries sustained by Representative Plaintiffs and Class members flow directly from the core common facts surrounding Defendant's misconduct, including, without limitation: (a) the Synthetic fragranced consumer products are known and/or should be known to Defendant as potentially harming the health of its customers and employees, (b) Defendant's Facilities were inadequate and, indeed, dangerous, for their intended use at the time they were offered to the public for its use/visitation, (c) Defendant does not provide adequate warnings concerning its use of and/or the dangerous nature of Synthetic fragranced consumer products used, (d) Defendant, despite having actual and/or constructive knowledge of the dangerous conditions of its Facilities,

[37] Exposure to volatile organic chemicals can cause lifelong respiratory diseases, accompanied by significant challenges to productivity and ability of the affected individual to lead a meaningful and fulfilling life. *See*, https://pmc.ncbi.nlm.nih.gov/articles/PMC7914726/.

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

failed to provide any public notice or warning and failed to decommission fragrance systems in the defective Facilities, and (e) Defendant failed to provide Facilities accessible to disabled persons. Defendant's obligations to provide a safe and accessible working environment and/or safe and accessible Facilities to its customers was well known and understood by Defendant at all relevant times.

103. In addition, there is a serious risk of harm to Representative Plaintiffs or Class members who came into contact with airborne Synthetic fragrance chemicals and particulates, independent of their membership in particularly susceptible groups.[38]

**The Injunctive Relief Sought Herein is Timely, and No Other Sufficient Remedy Exists**

104. As a result of the practices described above, Representative Plaintiffs and Class members, pursuant to the Americans with Disabilities Act, the Unfair Competition Law and other statutory schemes discussed herein are entitled to an Order enjoining such future conduct. Especially in light of the paucity of oversight of the commercial use of fragrance in places of public accommodations by, e.g., the Occupational Safety and Health Administration and/or the Food and Drug Administration, the injunctive relief requested herein would help to fill a regulatory and legislative void, helping to bring Defendant's businesses practices into better alignment with the rules governing fragrance use in other nations.

105. And yet, even organizations and rule-making bodies in those other nations provide insufficient guidance about the dangers of fragrance and, given their lack of jurisdiction in this country, fail to sufficiently incentivize businesses like Defendant's Facilities to cease using fragrance in public accommodations in the United States.

106. By way of example, the International Fragrance Association (IFRA) is a worldwide organization which represents the interests of the fragrance industry and provides guidance thereto but is, admittedly, "[c]reated by the fragrance industry for the fragrance industry"[39] and, thus, lacks

[38] Inhalation of volatile organic chemicals grossly increases the likelihood of developing chronic respiratory diseases which, in turn, creates a substantial decrease in the ability to work productively. *See*, https://pmc.ncbi.nlm.nih.gov/articles/PMC7914726/.

[39] *See*, https://ifrafragrance.org/about-ifra. Nonetheless, some of IFRA's publications are helpful guidance to the circumstances here to the extent they provide [an albeit conservative] baseline standard for what materials should not be used as fragrance ingredients—and show that

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

the neutrality necessary to objectively evaluate and/or curb fragrance use. Even if it did, the IFRA, just like the Modernization of Cosmetics Regulation Act of 2022 (MoCRA),[40] focuses its work on cosmetics and cosmetic product labeling, and not fragrance use in areas of public accommodation.

107. Currently, U.S. cosmetic regulations do not require brands to list individual fragrance allergens on their labels. Thus, allergenic fragrance components—such as limonene, linalool, or citral—may be, and generally are, captured under the single word "Fragrance." By contrast, the E.U. demands a more transparent approach, requiring many fragrance allergens to be so declared. Thus, in the United States, it remains largely hidden (admittedly, even to some businesses applying fragrance in their public areas) precisely how many dangerous compounds are in any particular fragrance, and designers thereof often argue that such information, especially when their fragrance is bespoked for a particular customer, constitutes a trade secret.

108. As a result, while dispersion in public accommodations of fragrance allergens (likely overlapping with E.U.-style lists) may, over time, be categorically banned by FDA edict, expansion of OSHA regulations or otherwise, the injunctive relief sought in this Complaint is immediately necessary for the protection of disabled persons—specifically, in order to guarantee the safe, equal and full access to Defendant's Facilities by all persons, regardless of disability.

**<u>Remediation of Defendant's Fragranced Environment is Simple and Necessary</u>**

109. Near identical forms of relief to that sought in this Complaint have been provided either voluntarily, or have been imposed by law, in the past in analogous situations—not simply on behalf of persons with disabilities, but on behalf of, and inuring to the benefit of, all persons, with the goal of protecting respiratory health.

---

this list is growing fast. *See*, https://d3t14p1xronwr0.cloudfront.net/docs/Standards-Documentation/ifra-51st-amendment-index-of-ifra-standards.pdf; *see also*, https://www.fda.gov/media/190319/download?attachment.

[40] *See*, https://ifrafragrance.org/about-ifra. Nonetheless, some of IFRA's publications are helpful guidance to the circumstances here to the extent they provide [an albeit conservative] baseline standard for what materials should not be used as fragrance ingredients—and show that this list is growing fast. *See*, https://d3t14p1xronwr0.cloudfront.net/docs/Standards-Documentation/ifra-51st-amendment-index-of-ifra-standards.pdf. The Modernization of Cosmetics Regulation Act of 2022 (MoCRA) is part of the Consolidated Appropriations Act, 2023 (P.L. 117-328).

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

110. Indeed, just several short years ago, the COVID-19 pandemic brought into sharp and often tragic focus the risks associated with inadequate attention to respiratory health—numerous government agencies and private employers alike thereafter, but often too late, establishing guidelines—other times imposing strict mandates—requiring that individuals "social distance," not touch common surfaces, demand cashless point of purchase transactions, wear face masks, etc.

111. Even before the COVID-19 pandemic, OSHA regulations, various state and federal health and safety statutes, and even many private companies' "best practices" prompted commercial entities of all types to provide workers with eye wear, gloves, ear and skin protection, and masks for employees in workplaces where the type of labor and/or equipment generated excessive dust particles and/or exposed workers and consumers to hazardous chemical compounds (e.g., California "Proposition 65" enumerated compounds), solvents, and bacteria and viruses.

112. By way of another (and uncannily similar) example, American businesses of all types have either voluntarily imposed (or been required by law to impose) smoking bans, and state[41] and federal legislative bodies have codified laws prohibiting smoking in countless public environments, including in and around "public accommodations"—these businesses, regulators and legislators having long since recognized and vowed to address the irritants within and dangers associated with first- and second-hand smoke. Indeed, this recognition of the dangers of smoking, along with the willingness and clear ability to ban smoking in public accommodations exemplifies the ease with which Defendant in the instant litigation can and should also eradicate fragrance use in its Facilities. Given its dangerous likeness to cigarette smoke, excessive dust, other lung and skin irritants and various other toxic compounds already banned in workplaces and public accommodations, this Court should permanently enjoin Defendant's use of harmful Synthetic fragranced consumer products in its own Facilities.

[41] *See, e.g.,* 8 CFR § 5148. (https://www.dir.ca.gov/title8/5148.html).

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

**FIRST COUNT**
**AMERICANS WITH DISABILITIES ACT**
**(42 U.S.C. §§ 12101, *et seq.*)**
**(On behalf of the Nationwide and California Non-Unruh Classes Only)**

113. Each and every allegation of the preceding paragraphs is incorporated in this Count with the same force and effect as though fully set forth herein.

114. The term "Class members," as used in this Count, refers exclusively to members of the proposed Class or Classes identified in the sub-header of this Count.

115. Title III of the Americans with Disabilities Act ("ADA") holds, as a "general rule," that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

116. As detailed above, the sensitivities of Representative Plaintiffs and Class members to (a) the synthetic compounds found in, (b) the secondary pollutants resulting from, and/or (c) the chemicals required to produce fragrance substantially limit one or more major life activities (e.g., breathing, concentration), as enumerated in 29 C.F.R. § 1630.2(i) and elsewhere. When Representative Plaintiffs and Class members are exposed to fragrance, symptoms such as migraine headaches, nausea, chest tightness, coughing, loss of voice, scratchy throats, rhinitis and concentration difficulties are almost inevitably experienced. Representative Plaintiffs and Class members, as a result, avoid certain public areas and cannot sit in proximity to others wearing fragrance without experiencing adverse and debilitating health reactions.

117. 42 U.S.C. § 12102(4)(D) provides that "[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." Furthermore, 42 U.S.C. § 12102(3)(i) provides that: "[t]he determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures such as— (I) medication, medical supplies... ."

118. Defendant discriminated against Representative Plaintiffs and Class members by denying them "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of Defendant's business during each visit and upon each incident of deterrence.

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

Failure to Make an Altered Facility Accessible

119. Representative Plaintiffs also allege, on information and belief, that Defendant's Facilities were substantially modified after January 26, 1993, independently triggering access requirements under the ADA.

120. The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's primary function also requires making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible.

121. As provided in parallel legislation at 29 U.S.C. § 701(a):

> "Congress finds that— (1) millions of Americans have one or more physical or mental disabilities and the number of Americans with such disabilities is increasing; (2) individuals with disabilities constitute one of the most disadvantaged groups in society; (3) disability is a natural part of the human experience and in no way diminishes the right of individuals to— (A) live independently; (B) enjoy self-determination; (C) make choices; (D) contribute to society; (E) pursue meaningful careers; and (F) enjoy full inclusion and integration in the economic, political, social, cultural, and educational mainstream of American society."

122. Here, Defendant altered Defendant's Facilities in a manner (introducing Synthetic fragranced consumer products in Defendant's Facilities into its HVAC systems and/or by use of commercial SDMs) that violated the ADA and was, thus, not readily accessible to members of the physically disabled public—including Representative Plaintiffs and Class members—to the maximum extent feasible.

123. And yet, Representative Plaintiffs allege, also on information and belief, that Defendant makes efforts to comply with *other* health-oriented laws such as smoking bans and is, thus, on notice of the dangerous properties of cigarette smoke in the workplace and in public accommodations, and has shown that actions should and can be taken to address those dangers. In short, Defendant has already conceded (i.e., through its ability to forbid/ban smoking) it has the ability, once sufficiently motivated, to cease and desist from unhealthy practices, and can easily do so as well by banning Synthetic fragranced consumer products in Defendant's Facilities.

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

Failure to Modify Existing Policies and Procedures

124. The ADA also requires reasonable modifications in policies, practices and/or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

125. Here, Defendant violated the ADA by failing to make reasonable modifications in policies, practices and/or procedures connected to and/or governing Defendant's Facilities when these modifications were necessary to make available to all persons with disabilities (and would not fundamentally alter the nature of) these goods, services, facilities and/or accommodations.

Failure to Maintain Accessible Features

126. Defendant, additionally, violated the ADA by failing to maintain in operable working condition those features of Defendant's Facilities that are required to be readily accessible to and usable by persons with disabilities.

127. Such failure by Defendant to maintain Defendant's Facilities in an accessible condition to disabled persons was not an isolated or temporary interruption in service or access due to maintenance or repairs.

128. As a direct and proximate result of the above-described willful and unlawful conduct of Defendant, Representative Plaintiffs and Class members seek injunctive relief, attorneys' fees and costs available under the ADA. 42 U.S.C. § 12205.

**SECOND COUNT**
**UNRUH CIVIC RIGHTS ACT**
**(Cal. Civ. Code §§ 51, 52)**
**(On behalf of the California Unruh Class Only)**

129. Each and every allegation of the preceding paragraphs is incorporated in this Count with the same force and effect as though fully set forth herein.

130. The term "Class members," as used in this Count, refers exclusively to members of the proposed Class or Classes identified in the sub-header of this Count.

131. California Civil Code § 51(b) states, in part, that:

> "All persons within the jurisdiction of this state are free and equal, and no matter what their [disability, medical condition, et al.] are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."

132. Furthermore, California Civil Code § 51.5 states, in part, that "[n]o business establishment of any kind whatsoever shall discriminate against… any person in this state on account of any [disability, medical condition, et al.]."

133. California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Civil Rights Act.

134. Continuing, California Civil Code § 51(f) states that "[a] violation of the right of any individual under the federal Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of [California Civil Code § 51]."

135. Representative Plaintiffs and California Unruh Class members were persons, each with a "disability," as that term is defined in California Civil Code § 51(e)(1).

136. Defendant's aforementioned acts and omissions denied the physically disabled public—including Representative Plaintiffs and California Unruh Class members—full and equal accommodations, advantages, facilities, privileges and services in a business establishment (because of their physical disability).

137. These acts and omissions (including the ones that violate the ADA) denied, aided or incited a denial, or discriminated against Representative Plaintiffs and California Unruh Class members in violation of the Unruh Civil Rights Act.

138. As a direct and proximate result of the above-described willful and unlawful conduct of Defendant, Representative Plaintiffs and California Unruh Class members suffered damages, including travel costs to/from, parking fees, lost wages, lost time, embarrassment, emotional distress and anxiety, lost business and social opportunities, a loss in association and familial connections, and unequal access to Defendant's Facilities—i.e., "public accommodations," as that term is defined under the law—which are routinely made available and accessible to non-disabled persons.

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

139. Thus, as a direct and proximate result of the above-described willful and unlawful conduct of Defendant, Representative Plaintiffs and California Unruh Class members seek actual damages, subject to the minimum award of $4,000 for each and every offense. California Civil Code § 52(a).

140. Representative Plaintiffs and California Unruh Class members also seek to enjoin Defendant from violating the Unruh Civil Rights Act, and to recover reasonable attorneys' fees and costs, pursuant to California Civil Code § 52(a).

141. California Civil Code § 52(f) provides that "[a]ctions brought pursuant to this section are independent of any other actions, remedies, or procedures that may be available to an aggrieved party pursuant to any other law." Representative Plaintiffs and California Unruh Class members, thus, seek each of these remedies, in the aggregate.

142. Since the Unruh Civil Rights Act provides a statutory minimum damage award of $4,000 for each and every violation thereof, since there exist numerous common questions and issues of fact and law in connection with this Count which predominate over any questions solely affecting individual California Unruh Class members, and since adjudicating these claims on a representative basis would be superior to pursuing individual and potentially inconsistent adjudications, Representative Plaintiffs seek certification of a California Unruh Class for purposes of recovering the statutory minimum damage for each California Unruh Class member, pursuant to Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure.

**<u>THIRD COUNT</u>**
**FALSE ADVERTISING ACT**
**(Cal. Business & Professions Code §§ 17500, *et seq.*)**
**(On behalf of the California Non-Unruh Class Only)**

143. Each and every allegation of the preceding paragraphs is incorporated in this Count with the same force and effect as though fully set forth herein.

144. The term "Class members," as used in this Count, refers exclusively to members of the proposed Class or Classes identified in the sub-header of this Count.

145. California Business and Professions Code § 17500 prohibits "unfair, deceptive, untrue or misleading advertising."

146. Defendant violated California Business and Professions Code § 17500 when it represented, through its false and misleading advertising, and other express representations, that Defendant's Facilities possessed characteristics and a value that they did not actually have. Specifically, inter alia, Defendant lead Class members to believe that Defendant's Facilities were safe, that Defendant offered non-discriminatory access thereto, that Defendant's products and services were not fragranced, that Defendant's customers could engage in commerce there without fear of personal harm, etc.

147. Defendant's deceptive advertising practices were specifically designed to induce Representative Plaintiffs and Class members to purchase Defendant's services and/or goods. Defendant engaged in broad-based marketing efforts to reach Representative Plaintiffs and Class members and to induce them to use Defendant's services and/or purchased Defendant's products. In none of these notices did Defendant explicitly notify or warn of the presence of toxic or hazardous materials in connection with the services and/or goods it was selling. Defendant was successful in masking its dishonesty insofar as it did induce Representative Plaintiffs and Class members to unwittingly make purchases.

148. Representative Plaintiffs and Class members would not have purchased and used Defendant's products/services had it not been for Defendant's misrepresentations of material facts. Representative Plaintiffs and Class members were denied the benefit of the bargain when they decided to purchase Defendant's services and/or products in lieu of its competitors' products/services (which actually provide a safe indoor atmosphere, consumer experience, etc.). Had Representative Plaintiffs and Class members been aware of these false and misleading advertising tactics, they would have paid less than what they did pay for Defendant's services and/or products or, more likely, they would not have purchased Defendant's services and/or products at all.

149. The above-detailed acts of Defendant—i.e., in disseminating said misleading and deceptive representations and statements throughout the State of California to consumers, including Representative Plaintiffs and Class members—were and are likely to deceive reasonable consumers by obfuscating the adverse environmental conditions present at

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

Defendant's Facilities, in violation of California Business and Professions Code §§ 17500, *et seq*.

150. In making and disseminating the statements alleged herein, Defendant knew or should have known that the statements were untrue or misleading, and acted in violation of California Business and Professions Code §§ 17500, *et seq*.

151. To this day, Defendant continues to engage in unlawful, unfair and deceptive advertising practices in violation of California Business and Professions Code § 17500. Specifically, Defendant continues to use advertising on its website, in social media and/or otherwise that is deceptive so as to induce consumers to patronize Defendant's business.

152. As a direct and proximate result of Defendant's unlawful conduct in violation of California Business and Professions Code § 17500, Representative Plaintiffs and Class members, pursuant to California Business and Professions Code § 17535, are entitled to an Order of this Court enjoining such future wrongful conduct and requiring Defendant to fully disclose the true nature of its misrepresentations.

153. Additionally, Representative Plaintiffs and Class members request an Order of this Court requiring Defendant to disgorge its ill-gotten gains and/or award full restitution of all monies wrongfully acquired by Defendant by means of such acts of false advertising, plus interest and attorneys' fees.

**FOURTH COUNT**
**CONSUMERS LEGAL REMEDIES ACT**
**(Cal. Civil Code §§ 1750, *et seq.*)**
**(On behalf of the California Non-Unruh Class Only)**

154. Each and every allegation of the preceding paragraphs is incorporated in this Count with the same force and effect as though fully set forth herein.

155. The term "Class members," as used in this Count, refers exclusively to members of the proposed Class or Classes identified in the sub-header of this Count.

156. Representative Plaintiffs bring this action for injunctive relief only, pursuant to California's Consumers Legal Remedies Act ("CLRA"). California Civil Code §§ 1750, *et seq*.

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

157. The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful."

158. Defendant's Facilities and the various items offered for sale there are "goods" and/or "services," as defined by the CLRA. California Civil Code § 1761.

159. Defendant is a "person," as defined by the CLRA. California Civil Code § 1761(c).

160. Representative Plaintiffs and Class members are "consumers," as defined by the CLRA. California Civil Code § 1761(d).

161. Purchases of Defendant's products/services by Representative Plaintiffs and Class members are "transactions," as defined by the CLRA. California Civil Code § 1761(e).

162. Defendant engaged in unfair and deceptive acts declared unlawful by the CLRA by knowingly and intentionally withholding important information about the toxic nature of fragrance use at Defendant's Facilities and by foisting such dangerous substances on unwitting disabled persons within the State of California.

163. Representing that (a) Defendant's products/services had/has characteristics, uses and/or benefits which they did/do not have, (b) Defendant's products/services were and are of a particular standard, quality, or grade, when they were, in fact, of another standard, quality and/or grade, and that (c) transactions with Defendant would confer rights, remedies or obligations that they did/do not have or involve (e.g., the right to access Defendant's Facilities by all persons, not merely non-disabled persons) constituted and continues to constitute an unfair or deceptive trade practice under the provisions of California Civil Code §§ 1770(a)(5), 1770(a)(7) and/or 1770(a)(14).

164. Defendant violated the CLRA by representing and advertising that its Facilities were, as discussed above, safe and equally and fully accessible to all persons, regardless of disability when, in fact, use of those Facilities involved being unwittingly subjected to hazards to human health and conditions intolerable to disabled persons.

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

165. Representative Plaintiffs and Class members reasonably and justifiably relied on Defendant's misrepresentations in purchasing Defendant's misrepresented products/services. Had Defendant's products/services been honestly advertised, Representative Plaintiffs and Class members would not have purchased them and/or would have paid less than they did pay for Defendant's products/services.

166. Representative Plaintiffs and Class members were unaware of the existence of those facts that Defendant suppressed and failed to disclose and, had those facts been known, Representative Plaintiffs and Class members would not have purchased Defendant's products/services and/or would not have purchased them at the prices at which they were offered.

167. Thus, Representative Plaintiffs and the Class members have been directly and proximately injured by Defendant's conduct. Such injuries may include, but are not necessarily limited to, the purchase of Defendant's products/services and/or the purchase of Defendant's products/services at the prices at which they were offered.

168. Insofar as Defendant's conduct violated California Civil Code § 1770(a)(5), Representative Plaintiffs and Class members are entitled to (pursuant to California Civil Code § 1782(d) and seek injunctive relief so as to end Defendant's violations of the California Consumers Legal Remedies Act.

169. Moreover, Defendant's conduct is malicious, fraudulent and wanton. Defendant intentionally mislead and withheld material information from consumers to increase the sale of Defendant's products/services.

170. Pursuant to California Civil Code § 1782(a), should Representative Plaintiffs seek to amend this Count to seek damages, Representative Plaintiffs shall first notify Defendant of the alleged violations of the Consumers Legal Remedies Act. If, in that instance, after 30 days from the date of the notification letter, Defendant has failed to provide appropriate relief for the violations, Representative Plaintiffs will amend this Complaint to seek compensatory, monetary and punitive damages, in addition to the equitable and injunctive relief already sought, and will further request this Court enter such Orders or judgments as may be necessary to restore to any

person in interest any money which may have been acquired by means of such unfair business practices, and for such other relief as provided in the CLRA.

**FIFTH COUNT**
**CALIFORNIA UNFAIR COMPETITION LAW**
**(Cal. Business & Professions Code §§ 17200, *et seq.*)**
**(On behalf of the California Non-Unruh Class Only)**

171. Each and every allegation of the preceding paragraphs is incorporated in this Count with the same force and effect as though fully set forth herein.

172. The term "Class members," as used in this Count, refers exclusively to members of the proposed Class or Classes identified in the sub-header of this Count.

173. Representative Plaintiffs bring this claim on behalf of Class members seeking equitable and injunctive relief to stop Defendant's misconduct, as complained of herein, and to minimize any future toxic fragrance releases by Defendant, as a result of Defendant's unfair, unlawful and deceptive business practices.

174. Defendant is a "person" as defined by Cal. Bus. & Prof. Code §17201.

175. The UCL prohibits acts of "unfair competition." As used in the UCL, "unfair competition" encompasses three distinct types of misconduct: (a) "unlawful…business acts or practices," (b) "unfair fraudulent business acts or practices," and (c) "unfair, deceptive or misleading advertising."

176. The knowing conduct of Defendant, as alleged herein, constitutes an unlawful and/or fraudulent business practice, as set forth in California Business and Professions Code §§17200-17208. Specifically, Defendant conducted business activities while failing to comply with the legal mandates cited herein. Such violations include, but are not necessarily limited to, releasing toxic compounds for the purpose of enhancing Defendant's branding and profitability, but without sufficient regard for disabled individuals' health and welfare.

177. Defendant committed an unlawful business act or practice in violation of the UCL when it released toxic compounds for these economic benefits, but without sufficient regard for disabled individuals' health and welfare, in violation of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq*. Support for Defendant's violation of the

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

"unfairness" prong is further evidence by Defendant's violations of the Americans with Disabilities Act (e.g., 42 U.S.C. §12182), the Unruh Civil Rights Act (California Civil Code §§ 51, 52), California Health and Safety Code § 19955(a)) (*Note that Section 19955(a) not being pled here for purposes of pleading a private right of action but, rather, as illustrative of the standard of care and practice for California businesses*) and California Business and Professions Code §§ 17500, *et seq.*

178. Defendant's conduct also violates the "unfairness" prong of the UCL in that Defendant's failure to disclose that its fragranced environment harms the public was not outweighed by any countervailing benefits to consumers or competition.

179. Defendant's conduct was and continued to be fraudulent, because directly or through its agents and employees, Defendant made false representations to Representative Plaintiffs and Class members that were likely to deceive them. These false representations (i.e., the advertisement of safe, fully and equally accessible facilities, services and goods) are and were likely to deceive reasonable California purchasers, such as the Representative Plaintiffs and Class members, into purchasing Defendant's products/services.

180. There were reasonable alternatives available to Defendant to further Defendant's legitimate business interests, other than the conduct described herein.

181. Defendant's conduct in making the representations described herein constitutes a knowing failure to adopt policies in accordance with and/or adherence to applicable laws, as set forth herein, all of which are binding upon and burdensome to Defendant's competitors. This conduct engenders an unfair competitive advantage for Defendant, thereby constituting an unfair business practice under California Business and Professions Code §§ 17200-17208.

182. Representative Plaintiffs and Class members have been directly and proximately injured by Defendant's conduct in ways including, but not necessarily limited to, the monies paid to Defendant for products/services that lack the characteristics advertised, interest lost on those monies, and other forms of unwitting financial and promotional support of a business enterprise that promotes deception and undue greed to the detriment of health- and environmentally-conscious consumers.

183. As a result of the business acts and practices described above, Representative Plaintiffs and Class members, pursuant to California Business and Professions Code § 17203, are entitled to and request an Order enjoining such future wrongful conduct on the part of Defendant and such other Orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and to restore to any person in interest any money paid for use of Defendant's Facilities as a result of the wrongful conduct of Defendant.

184. Defendant has clearly established a policy of accepting a certain amount of collateral damage, as represented by the harms to the Representative Plaintiffs and Class members herein alleged, as incidental to its business operations, rather than accepting the alternative costs of full compliance with fair, lawful, and honest business practices, ordinarily borne by Defendant's more responsible competitors and as set forth in legislation and the judicial record. However, public policy mandates that a certain level of corrective/preventative actions must be adopted by handlers and/or dispersers of hazardous chemicals in order to protect the health and safety of the public and the environment.

185. Representative Plaintiffs and Class members seek all equitable, injunctive and declaratory relief allowed by law, including reasonable attorneys' fees and costs pursuant to this claim and pursuant to California Code of Civil Procedure § 1021.5 and other statutory schemes detailed in this pleading.

186. California Code of Civil Procedure § 1021.5 provides, in part, that:

> "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any.

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800

**PRAYER FOR RELIEF**

**WHEREFORE,** Representative Plaintiffs, individually, and on behalf of each member of the proposed Classes, respectfully request the Court enter judgment in favor of Representative Plaintiffs and the Classes, and for the following specific relief against Defendant as follows:

1. That the Court declare, adjudge and decree that this action is a proper class action and certify the proposed Nationwide Class, the California Non-Unruh Class and/or any other currently undefined but appropriate equitable and/or declaratory relief subclasses under Federal Rules of Civil Procedure Rule 23(b)(1) and/or 23(b)(2), including appointment of Representative Plaintiffs' counsel as Class Counsel;

2. That the Court declare, adjudge and decree that this action is a proper class action and certify the proposed California Unruh Class and/or any other currently undefined but appropriate damages subclasses under Federal Rules of Civil Procedure Rule 23(b)(3), including appointment of Representative Plaintiffs' counsel as Class Counsel;

3. That Defendant be found to have violated California Business and Professions Code §§ 17200, *et seq*. and §§ 17500, *et seq*., California Civil Code §§ 51 and 52, *et seq*., §§ 1750, *et seq*. and the Americans with Disabilities Act (42 U.S.C. §§ 12101, *et seq*. as to the Representative Plaintiffs and Class members;

4. For an award to Representative Plaintiffs and to California Unruh Class members of actual damages in an amount to be proven at trial, subject to the statutory minimum damages of $4,000 for each and every offense, specifically and exclusively pursuant to the California Unruh Civil Rights Act;

5. For an award of pre- and, subsequently to judgment, post-judgment interest on the amount of any and all economic losses, at the prevailing legal rate;

6. For a permanent injunction enjoining Defendant from dispersing Synthetic fragranced consumer products within its Facilities located within the United States of America, in spaces utilized by Class members and/or the public at large and/or limiting use of fragrance only to areas/rooms specified by customer demand and only after full disclosure thereto of the facts iterated in this pleading;

7. For an Order requiring Defendant to provide a form of corrective advertising to address the misrepresentations, misstatements and/or omissions made in the advertising and other promotional materials related to Defendant's Facilities;

8. For an Order requiring an accounting for, and imposition of a constructive trust upon, all monies received by Defendant as a result of the unfair, misleading, fraudulent and unlawful conduct alleged herein, such funds to be used for discontinuing and eradicating any aftereffects of the use of Synthetic fragranced consumer products at Defendant's Facilities;

9. For an award of reasonable attorneys' fees, pursuant to California Code of Civil Procedure § 1021.5, California Civil Code § 52, California Civil Code § 1780(d) and/or 42 U.S.C. § 12205, and for costs and litigation expenses, as allowed by law; and

10. For all other Orders, findings and determinations identified and sought in this Complaint.

**JURY DEMAND**

Representative Plaintiffs, individually, and on behalf of each of the Plaintiff Classes, hereby demand a trial by jury for all issues triable by jury.

Dated: May 19, 2026 By: */s/ Scott Edward Cole*

Scott Edward Cole, Esq. (S.B. #160744)
Laura G. Van Note, Esq. (S.B. #310160)
Mark T. Freeman, Esq. (S.B. #293721)
**COLE & VAN NOTE**
555 12th Street, Suite 2100
Oakland, California 94607
Telephone: (510) 891-9800
Facsimile: (510) 891-7030
Email: sec@colevannote.com
Email: lvn@colevannote.com
Email: mtf@colevannote.com

*Attorneys for Representative Plaintiffs and the Plaintiff Classes*

COLE & VAN NOTE
ATTORNEYS AT LAW
555 12TH STREET, SUITE 2100
OAKLAND, CA 94607
TEL: (510) 891-9800